[No. 53280–0.   En Banc.   July 30, 1987.]

THE STATE OF WASHINGTON, *Appellant,* v. DEAN A. BERNHARD, *Respondent.*

Seth R. Dawson, Prosecuting Attorney, and Seth Aaron Fine, Deputy, for appellant.

Lenell Nussbaum of Washington Appellate Defender Association, for respondent.

UTTER, J.—The State of Washington challenges the trial court's power under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, to sentence Dean Allen Bernhard, a defendant with a prior criminal record, to an inpatient drug treatment facility. According to the State, under a standard SRA sentence, the trial court has no authority to specify the confinement facility. In addition, the State argues that the authority to impose an exceptional sentence refers only to the duration, not to the conditions, of the sentence imposed. We reject both of the State's arguments. Under the SRA and the City and County Jails Act (CCJA), RCW 70.48, the trial court has limited authority to select an available county facility for defendants sentenced to confinement of 1 year or less. As to Bernhard's sentence, we agree with the Washington Sentencing Guidelines Commission and hold that the power to impose an exceptional community supervision sentence includes authority to name exceptional conditions. We hold further that the exceptional sentence imposed in this case was justifiable.

## I

On October 29, 1985, the defendant, Dean Allen Bern-

hard, pleaded guilty to second degree burglary. Bernhard had two prior convictions, one of which resulted in a substantial period of time in county jail. The trial court imposed sentence pursuant to the SRA, under which Bernhard had an offender score of 3 and a standard sentence duration of 4 to 12 months. At sentencing the State recommended a sentence of 4 months' partial confinement in a work release facility (Snohomish County Jail). Because the trial court found Bernhard's criminal behavior was the direct result of his addictions to drugs and alcohol, the court sentenced him to serve 12 months' confinement in the inpatient Teen Challenge Drug Treatment Program (Teen Challenge).

Based on an affidavit filed by defendant's counsel, the trial court found Teen Challenge to be an agency utilized by Snohomish County for probation and parole purposes. The program is certified and licensed by the State Bureau of Alcohol and Substance Abuse. Treatment in the program requires a "black out" of communication, including total confinement, for the first 30 days. After the initial 30-day period, residents may be permitted up to two leaves per month for 10 hours each. To sentence Bernhard to Teen Challenge, the trial court felt it necessary to impose an exceptional sentence under RCW 9.94A.120(2). As exceptional circumstances the trial court noted that the defendant's crimes directly resulted from his addiction, that he had served time in jail, which had no effect on his behavior, and that unless Bernhard received adequate treatment for his addictions, incarceration would have no effect on his behavior.

Initially, the State appealed from this sentence to Division One of the Court of Appeals, which remanded for a supplemental determination whether Teen Challenge is a facility at which confinement may be served within the meaning of the SRA. After the trial court made this supplemental finding, the State again appealed to the Court of Appeals, which certified the appeal to this court. We granted direct review pursuant to RCW 2.06.030.

## II

As a preliminary matter, Bernhard makes two arguments why this court need not reach any of the issues raised by the State's appeal. Neither argument has merit. First, Bernhard argues that because the 12–month sentence comes within the standard range, the State may not appeal. *See* RCW 9.94A.210(1). However, this limitation on the right of appeal only precludes appellate review of challenges to the amount of time imposed. *State v. Ammons*, 105 Wn.2d 175, 182, 713 P.2d 719, 718 P.2d 796 (1986). Since the State challenges the trial court's authority to designate a facility, rather than the amount of time, RCW 9.94A.210(1) does not apply. Next, Bernhard argues that because the actual sentence imposed is more restrictive on the defendant's freedom than the sentence recommended by the State, the State has not been prejudiced; making any error harmless and not reversible. *See In re Ferguson*, 41 Wn. App. 1, 15, 701 P.2d 513 (1985). However, if the trial court exceeded its authority in pronouncing sentence, reversible error has occurred. *State v. Eilts*, 94 Wn.2d 489, 617 P.2d 993 (1980).

## III

Under the SRA, a trial judge must impose a determinate sentence, defined as a specific time period of total confinement, partial confinement, community supervision, or community service work, and/or a fine of a specified amount. RCW 9.94A.030(10). Judges must impose sentences within a "presumptive sentencing range" and these sentences are "expressed in terms of total confinement." RCW 9.94A.370. The original language adopted by the Legislature was ambiguous concerning a trial court's ability to impose non-confinement sentences. Washington Sentencing Guidelines Comm'n (Commission), minutes of meeting on Dec. 9, 1983, at 3. To clear up any ambiguity, the Commission proposed several amendments, which the Legislature adopted. One amendment clarified alternatives to total confinement, RCW 9.94A.380; Laws of 1984, ch. 209, § 21. In a separate

amendment, the Legislature created a new section entitled community supervision, RCW 9.94A.383; Laws of 1984, ch. 209, § 22. The purpose of the new section was to make it clear that trial courts could impose community supervision as the *sole sanction* for offenders sentenced to 1 year or less. Commission minutes, at 3–4.

Bernhard correctly points out that under section .383 the trial court has the authority to require him to serve 12 months of community supervision, without imposing any time of confinement whatsoever. In fact, the Legislature viewed the amendments adopted in 1984 as restoring greater discretion to trial judges, characterizing the amendments as "express authority to suspend or defer the sentences of felons sentenced to a year or less in jail." Final Bill Report, SHB 1247, 48th Legislature (1984), Synopsis as Enacted, at 3. Bernhard argues further that spending 12 months at an inpatient drug and alcohol program can be a sentence condition within the meaning of "community supervision."

We disagree. While the 1984 amendments provided greater discretion for sentences of 1 year or less, the Legislature did not alter the definition of "community supervision", which means "crime–related prohibitions and other sentence conditions imposed pursuant to this chapter by a court." RCW 9.94A.030(4). Crime–related prohibitions "shall not be construed to mean orders directing an offender affirmatively to participate in rehabilitative programs or to otherwise perform affirmative conduct." RCW 9.94A.030(7). "Other conditions" may include inpatient treatment programs, but only for first–time offenders pursuant to RCW 9.94A.120(5). In addition, the Legislature did not include inpatient treatment as an alternative to confinement under RCW 9.94A.380. Consequently, because Bernhard is a repeat offender, the trial court could not include time at an inpatient treatment facility as a condition of a standard community supervision sentence.

Absent authority under the standard community supervision sentence, we can uphold the trial court's sentence

only if (1) a trial court's standard sentencing authority allows it to select Teen Challenge as Bernhard's place of confinement, or (2) the exceptional sentence provision, RCW 9.94A.120(2), empowers trial courts to impose sentence conditions outside of those allowed under the standard sentence.

## A
### STANDARD SENTENCING AUTHORITY

In challenging the trial court's authority to specify the place of confinement, the State argues correctly that prior to the SRA, only correctional authorities had the power to determine in which facility a defendant would be confined. Under the old sentencing scheme, once Bernhard pleaded guilty to second degree burglary, he became a class B felon (RCW 9A.52.030(2)), subject to "confinement in a state correctional institution" and/or a fine. RCW 9A.20.021-(1)(b). As the State has pointed out, when the trial court sentenced a defendant to a state institution, the Department of Corrections, not the trial judge, selected the appropriate facility. RCW 72.13.150. *See Clark Cy. Sheriff v. Department of Social & Health Servs.*, 95 Wn.2d 445, 448–49, 626 P.2d 6 (1981). If a trial court wished to specify an inpatient treatment facility, it could do so, but only by suspending or deferring sentence and making participation in the inpatient program a condition of probation. *See* RCW 9.92.060; RCW 9.95.210; *see also State v. Walker*, 27 Wn. App. 544, 547–48, 619 P.2d 699, *review denied*, 93 Wn.2d 1017 (1980).

Bernhard argues that prior to the SRA, the CCJA contemplated a trial court having the power to sentence defendants to county jails or facilities other than jails. While the CCJA did contemplate such a power, it did not apply when defendants were convicted of felonies; sentencing classifications allowed a court to sentence a defendant to county jails *only* for gross misdemeanors and misdemeanors. RCW 9A.20.020(2), (3). Thus, for convicted felons sentenced prior to the SRA, the Department had the power

to select the specific confinement facility.

The State argues further that the SRA did not alter the status quo, preserving correctional authorities' power to select the facility. We disagree. The SRA significantly altered prior sentencing law for felons by distinguishing on a length of sentencing basis. Now only felons confined for more than 1 year "shall [serve their sentence] in a facility or institution operated, or utilized under contract, by the state." RCW 9.94A.190. For convicted felons like Bernhard, sentences of 1 year or less "shall be served in a facility operated, licensed, or utilized under contract, by the county." RCW 9.94A.190.

Despite these changes, the SRA contains no express instructions on who selects the confinement facility. In construing the sentencing scheme, our function is to discover and give effect to the Legislature's intent. *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.*, 105 Wn.2d 353, 358, 715 P.2d 115 (1986). To discover that intent, we look to the enactment as a whole, *Stewart Carpet,* at 358, along with statutes pertaining to the same subject matter, which must be harmonized if at all possible. *King Cy. v. Taxpayers,* 104 Wn.2d 1, 9, 700 P.2d 1143 (1985). Under the SRA, trial courts no longer have the authority to require participation in treatment programs as a condition of probation. *See* RCW 9.94A.130. However, several SRA provisions, along with recent statutory changes in the CCJA, provide compelling evidence that the Legislature intended for trial courts to have limited discretion to select the place of confinement when sentence was to be served in a county facility.

Under the SRA, after conviction and sentencing, the offender's facility classification materials must be sent to the Department of Corrections, if the offender is committed to the Department's custody. RCW 9.94A.110; RCW 9.95-.028. Only persons sentenced to terms of more than 1 year come under the authority of the Department. RCW 70.48-.400. Presumably, felons sentenced to state custody would be classified pursuant to RCW 72.13.150, which is how

facility selection was handled prior to the SRA. Felons sentenced to county jails do not come under the authority of state correctional authorities. Neither the SRA nor the new inmate classification process, RCW 9.95.028, .030, place any classification responsibilities on local correctional authorities. Yet, when the Legislature sought to authorize local authorities to act, it did so expressly. *See* Laws of 1984, ch. 209, § 6(8) (codified in RCW 9.94A.120(8)) (granting local jail authorities the power to schedule court ordered intermittent sentences as space permits).

In 1984, the Legislature amended the CCJA (RCW 70.48) to make it conform with and to reinforce the SRA. Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* § 9.94A.190 comment, at II–18 (1984). A new section, RCW 70.48.400, contemplates trial court authority to sentence felons confined for 1 year or less to a specific type of county facility. Thus, persons such as Bernhard "may be sentenced to a jail as defined in RCW 70.48.010 [and] shall be the financial responsibility of the . . . county." RCW 70.48.400. The plain language of the statute authorizes trial courts to sentence Bernhard to any facility defined as a county jail under RCW 70.48.020. The CCJA defines "jails" as including a variety of facilities according to the length of sentence and security requirements of the defendant. RCW 70.48.020(5). Defendants subject to sentences not exceeding 90 days may be sentenced to "detention facilities". RCW 70.48.020(2). Defendants sentenced to terms not exceeding 1 year may be sentenced to "correctional" facilities. RCW 70.48.020(4). Defendants convicted of DWI offenses or persons who "do not require the level of security normally provided in detention and correctional facilities" may be sentenced to "special detention facilities". RCW 70.48.020(3). These facilities can use "combinations of features including, but not limited to, low–security or honor prisoner status . . . work release . . . or alcohol or drug rehabilitation programs." RCW 70.48.210(4). Thus, defendants confined for less than 1 year in a county "jail", may be sentenced to a

special detention facility, if appropriate under the circumstances.

The State argues that important policy reasons dictate that the power to designate a confinement facility must be lodged with an entity having the power to change the designation if certain types of problems develop (medical or psychiatric problems, good or bad behavior, problems between inmates). While this seems true, the Legislature has given the trial court the power to modify its sentence if the defendant violates any condition or requirement. RCW 9.94A.200(1). Moreover, the power to sentence a defendant to a low–security special detention center pursuant to RCW 70.48.400, implies the power to alter the sentence if the facility does not suit the defendant's needs.

We hold that for all defendants sentenced to confinement of 1 year or less, the trial court has the authority to select which of the available county facilities, as defined in RCW 70.48.020, best suits the defendant's situation. Our holding furthers the Legislature's conception of the SRA as structuring, rather than eliminating, trial court discretion. RCW 9.94A.010. At the same time, we also recognize that the Legislature left facility selection for those sentenced to more than 1 year in the hands of state correctional authorities. Preserving this distinction serves two other express purposes of the SRA: (1) "Ensur[ing] that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;" and (2) "offer[ing] the offender an opportunity to improve him or herself". RCW 9.94A.010(1) and (5).

In the instant case, the validity of the sentence depends upon whether Teen Challenge qualifies as a special detention facility under the CCJA. Such facilities can be operated by a governing unit or "may be operated by a noncorrectional agency or by noncorrectional personnel by contract with the governing unit." RCW 70.48.210(4). Facility employees must meet standards of training and education established by the Criminal Justice Training Commission (*see* WAC 139–36), and the facility must meet

physical plant standards (WAC 289–10) and mandatory custodial care standards (WAC 289–26). Thus, for Teen Challenge to qualify as a special detention facility it must have a contract with the county (RCW 70.48.210(4)) and meet the various standards set out in the appropriate WAC regulations.

The record merely establishes that Teen Challenge has been certified and licensed by the Bureau of Alcohol and Substance Abuse, and thereby has complied with unidentified WAC regulations. Thus, Teen Challenge is qualified to take defendants from the court system, and has been utilized by Snohomish County as a "parole and referral agency." We agree with the trial court that both the public and Bernhard would be better served if he could receive the more appropriate rehabilitation offered by Teen Challenge, rather than the Snohomish County Jail. Undoubtedly, under the sentencing regime in force prior to the SRA, trial courts had the power to require inpatient treatment at Teen Challenge as a condition of probation for convicted offenders. Under the SRA, trial courts can no longer defer sentences, RCW 9.94A.130, and standard community supervision sentences cannot require rehabilitation for repeat offenders. RCW 9.94A.030(4), and (7). Therefore, for Teen Challenge and similar institutions to continue serving the needs of the court system in terms of standard sentences, they must conform with the statutory requirements for a special detention facility, including an express contract or license from the county to operate such a facility. We encourage Teen Challenge, if it has not already done so, to take the necessary steps to comply with applicable regulations and to enter into a special detention facility contract with Snohomish County.

Ordinarily we would remand this case to the trial court to determine whether Teen Challenge qualifies as a special detention facility. However, because we conclude that sentencing Bernhard to Teen Challenge comes within the trial court's power to impose an exceptional community supervision sentence, remand becomes unnecessary.

## B
### EXCEPTIONAL SENTENCE AUTHORITY

The Washington Sentencing Guidelines Commission recently observed that "[s]tandard sentences cannot include treatment conditions or any requirement for affirmative behavior which is not designated as a 'crime–related prohibition.'" D. Fallen, *Preliminary Evaluation of Washington State's Sentencing Reform Act,* at xii (1986). As we explained earlier in this opinion, because of Bernhard's repeat offender status, the standard community supervision sentence cannot include inpatient treatment. Recognizing this limitation, the trial court sentenced Bernhard to Teen Challenge by invoking its authority to impose an exceptional sentence. RCW 9.94A.120(2). The State challenges the trial court's interpretation of its sentencing authority, arguing that an exceptional sentence cannot be used to impose conditions outside of those allowed under the standard community supervision sentence. We disagree.

The SRA authorizes a trial court to impose exceptional sentences "outside the standard sentence range". RCW 9.94A.120(2). In prior cases, we have recognized that one element of the standard range is the durational length of the sentence as listed in the sentencing grid, RCW 9.94A.310. *See, e.g., State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986); *State v. Ammons,* 105 Wn.2d 175, 182–83, 713 P.2d 719, 718 P.2d 796 (1986). At issue here is whether the Legislature intended "sentence range" to mean the conditions of the punishment imposed, as well as the duration of the sentence. Our previous decisions imply that exceptional sentences are not limited to the durational element. *See, e.g., Oxborrow,* at 529.[1] Nevertheless, to determine the Legislature's intent, we must look first to the language of the SRA. *See Service Employees Int'l, Local 6 v. Superintendent of Pub. Instruction,* 104 Wn.2d 344, 705

---

[1] In *Oxborrow,* the majority opinion characterized the issue in the case as whether "the *duration* of Oxborrow's exceptional sentence was justified . . ." 106 Wn.2d at 529.

P.2d 776 (1985). Although somewhat ambiguous on the issue, the statutory language suggests that "standard range" is a multifaceted concept embracing both the duration and conditions of the sentence imposed.

The SRA defines "sentence range" as "the sentencing court's discretionary range in imposing a nonappealable sentence." Former RCW 9.94A.030(16) (now codified at RCW 9.94A.030(22)). Examination of the various parts of the SRA demonstrates that the trial court's "discretionary range" for a community supervision sentence extends to both the duration of the sentence and to the conditions imposed. The Legislature expressly instructed the Commission that each standard range should include one or more of the various sentencing categories: total confinement, partial confinement, community supervision, community service, and a fine. RCW 9.94A.040(3). Every SRA sentence outside of the standard range must be a determinate sentence, RCW 9.94A.120(3), the definition of which reflects the dual elements of length and category of punishment. RCW 9.94A.030(10). While the "presumptive sentence ranges" listed in the sentencing grid are "expressed in terms of total confinement", RCW 9.94A.370, the trial court has discretion to impose community supervision in lieu of total confinement for all sentences of 1 year or less. RCW 9.94A.383. Within the community supervision category, the Legislature has provided trial courts with a structured discretionary range of "crime–related prohibitions" and "other sentence conditions." RCW 9.94A.030(4). More specifically, the dual elements of duration and conditions of a community supervision sentence are reflected in the first–time offender provision, RCW 9.94A.120(5), a provision the Legislature expressly characterized as coming within the standard range. RCW 9.94A.210(1).

We think the statutory language indicates that a trial court's power to go outside the standard sentence range includes authority to impose community supervision conditions not ordinarily permitted. Nevertheless, we recognize that the statutory language is subject to more than one

interpretation. We therefore think it appropriate to examine legislative history for further evidence of the Legislature's intent. *Department of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982).

The Legislature patterned the SRA on a similar determinate sentencing scheme already operating in Minnesota. *In re Myers*, 105 Wn.2d 257, 266, 714 P.2d 303 (1986). Under the Minnesota system, courts may go outside standard sentencing guidelines either as to the "duration" or the "disposition" of the sentence. *See, e.g., State v. Nelson*, 329 N.W.2d 827 (Minn. 1983). The dispositional departure results from a Minnesota court's ability to stay a sentence and impose probationary conditions of their own choosing. D. Boerner, *Sentencing in Washington* § 9.3, at 9–9 (1985). Because Washington courts no longer have the express authority to defer or suspend a sentence, except for special sexual offenders, RCW 9.94A.130, dispositional departures do not exist under the SRA. D. Boerner § 9.3, at 9–9. However, the Minnesota guidelines do not specify the conditions of probation, applying only to the decision whether to impose an immediate prison sentence or to grant probation. D. Boerner § 9.3, at 9–9. By contrast, while the SRA terminated Washington courts' authority to defer or suspend a sentence, the Legislature has provided a discretionary range of "crime–related prohibitions" and "sentence conditions", which the trial court may impose as part of a community supervision sentence. *See* RCW 9.94A.030(4), (7).

We have recently recognized similarities between the decision to impose community supervision under the SRA and imposition of probation under the prior indeterminate sentencing regime. *State v. Nelson*, 108 Wn.2d 491, 504, 740 P.2d 835 (1987). Moreover, when the Legislature amended the SRA to create a separate community supervision section during the 1984 session, RCW 9.94A.383, it described the amendment as providing "express authority to suspend or defer the sentences of felons sentenced to a year or less in jail." Final Bill Report, SHB 1247, 48th Legislature (1984), Synopsis as Enacted, at 3. While this

description probably overstates the actual effect of RCW 9.94A.383, it does demonstrate a legislative intent that community supervision would provide trial courts with structured discretion for imposing sentence conditions other than confinement. In the most recent legislative session, the Legislature recognized community supervision as the functional equivalent of probation for certain purposes. Second Substitute House Bill 684, § 1, 50th Legislature (1987).

Because of the similarities between community supervision and probation, recognized by both this court and the Legislature, we conclude that although the Legislature did not intend to grant the authority to depart as to the "disposition" of a sentence, it did provide trial courts with the ability to depart from the discretionary range of conditions imposed by a community supervision sentence. Our conclusion becomes inescapable, given the Commission's most recent statement on the SRA. According to a report issued by the Commission just a few months ago, "[t]here are no restrictions on conditions or length of community supervision for exceptional sentences." D. Fallen, *Preliminary Evaluation of Washington State's Sentencing Reform Act* 33 (1986). "Exceptional sentences may be imposed to . . . [s]et sentence conditions not otherwise permitted for a given offender . . ." *Preliminary Evaluation of Washington State's Sentencing Reform Act,* at 9.[2]

Thus, statutory language and legislative history demonstrate that the Legislature intended RCW 9.94A.120(2) as authorization for trial courts to impose sentences outside the range of conditions allowed under a standard community supervision sentence. The grant of such authority furthers the legislative purposes expressed in the SRA, as well

---

[2]In 1985, 487 nonstandard sentences were imposed, with 234 ordering treatment when the offender was ineligible under the standard sentence. D. Fallen, *Preliminary Evaluation of Washington State's Sentencing Reform Act,* table 9, at 15 (1986). Of the sentences denominated exceptional, 3 percent varied the conditions, rather than the duration, of the sentence. *Preliminary Evaluation of Washington State's Sentencing Reform Act,* at 11.

as the specific purpose underlying the exceptional sentence provision. Essentially, the Legislature designed the SRA in order to establish a structured, but still discretionary, sentencing scheme built upon the principle of just retribution. D. Boerner § 2.5(b), at 2–34. Punishment, the paramount goal, *State v. Rice,* 98 Wn.2d 384, 393, 655 P.2d 1145 (1982), is reflected in the first three purposes enumerated by the Legislature. RCW 9.94A.010(1)–(3). At the same time, the Legislature also intended to accomplish certain future oriented utilitarian goals such as "[p]rotect[ing] the public", RCW 9.94A.010(4), and "[o]ffer[ing] the offender an opportunity to improve him or herself . . ." RCW 9.94A.010(5); *see* D. Boerner § 2.5(a), at 2–34.

The principles of punishment and just retribution operate to set the upper and lower limits of the duration and the nature of the standard sentencing range. Decisions as to the specific sentence imposed reflect the SRA's utilitarian concerns. D. Boerner § 2.5(b), at 2–34. In providing offenders with a chance of self–improvement, the SRA continues a commitment to rehabilitation, albeit to a lesser degree than under the indeterminate sentencing system. *See Rice,* at 393; D. Boerner § 2.5(c), at 2–35. While the SRA continues to deem court ordered participation appropriate for first–time offenders, RCW 9.94A.120(5), and sex offenders, RCW 9.94A.120(7), standard range sentences for other offenders cannot require, as a condition of sentence, any affirmative actions, such as participation in rehabilitation programs. RCW 9.94A.030(7). Nevertheless, the Legislature designed the exceptional sentence provision because "no predetermined structure . . . could accommodate every individual factual situation." D. Boerner § 9.1, at 9–1.

Because "not all exceptional fact patterns [could] be anticipated," Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* § 9.94A-.390, comment, at II–38 (1984), the drafters recognized that "the sentencing court must be permitted to tailor the sentence to the facts of each particular case." *Oxborrow,* at 530. Thus, the exceptional sentence provision allows the

"necessary individualization in exceptional cases while insuring consistency with [the articulated purposes] for which punishment is to be imposed." D. Boerner § 9.1, at 9.1. Bernhard's particular situation highlights the wisdom underlying the Legislature's decision to provide some discretion for trial courts to go outside the standard range of community supervision conditions.

In sentencing Bernhard to Teen Challenge, the trial court entered written findings of fact and conclusions of law in accordance with RCW 9.94A.120(3). As the "substantial and compelling reasons" in support of its decision, required by RCW 9.94A.120(2), the trial court listed the following: (1) Bernhard's serious addictions to alcohol and drugs substantially contributed to his commission of this and prior offenses; (2) given Bernard's criminal history and addictions, incarceration would not prevent the commission of further crimes unless Bernhard received adequate treatment for his addictions; (3) the defense proposed the Teen Challenge inpatient treatment alternative; (4) Teen Challenge offered a long–term inpatient treatment program, consisting of total and partial confinement as required under RCW 9.94A.180; and (5) society would be better protected by placing Bernhard, at his own request, in a rehabilitative program like Teen Challenge, under court order to remain at the facility and abide by all rules and regulations.

█ To review the trial court's exceptional sentence, we look to the standards supplied in RCW 9.94A.210(4). *State v. Armstrong*, 106 Wn.2d 547, 549, 723 P.2d 1111 (1986). No one challenges the trial court's sentence under the too excessive or too lenient standard. RCW 9.94A.210(4)(b).[3] Consequently, this case requires us to consider only subsection (a) of RCW 9.94A.210(4), which consists of two parts. *State v. Nordby*, 106 Wn.2d 514, 517, 723 P.2d 1117 (1986).

---

[3]We note in passing that the 12–month sentence to Teen Challenge constitutes a more severe restriction on Bernhard's freedom than the 4 months in a work release program suggested by the State.

First, we apply a clearly erroneous standard to determine whether the sentencing judge's reasons are supported by the record. *Nordby,* at 518. Here, the trial court based its conclusions on expert testimony and the State has not challenged the accuracy of any of the entered findings. In fact, the prosecutor expressly acknowledged that if the trial court had the power to sentence Bernhard to Teen Challenge, both the public and Bernhard would be better served.

■ Our second inquiry under RCW 9.94A.210(4)(a) requires us to "independently determine, as a matter of law, if the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range." *Nordby,* at 518. Although the statute lists "aggravating" and "mitigating" circumstances to be considered when imposing a non-standard range sentence, *see* RCW 9.94A.390, the list is illustrative rather than exclusive. *Armstrong,* at 550. Here, the State's only challenge to the trial court's reasons concerns the propriety of considering Bernhard's addictions to drugs and alcohol. The State correctly points out that the voluntary use of drugs and alcohol cannot be considered under former RCW 9.94A.390(5) (now codified at RCW 9.94A.390(1)(e)). However, subsection (5) deals explicitly with the defendant's capacity to appreciate the wrongfulness of his crime. Former RCW 9.94A.390(5). By contrast, the trial court considered Bernhard's addictions, not in the context of diminished capacity, but rather as a direct cause of Bernhard's criminal conduct, from which the public could not be protected unless Bernhard received treatment for his addictions.

Given the circumstances of this case, the SRA's utilitarian purposes could not have been served by a sentence that did not include some form of inpatient treatment for Bernhard's drug and alcohol addictions. As the trial court concluded after hearing expert testimony, Bernhard's criminal behavior directly resulted from these addictions. Placing Bernhard in a work release facility, as the State suggested, would not have protected the public from future criminal

behavior. *See* RCW 9.94A.010(4). While the Legislature has concluded generally that coerced rehabilitation is ineffective for repeat offenders, D. Boerner § 2.5(c), Bernhard stepped forward and asked for the opportunity to improve himself, which the SRA expressly establishes as one of its utilitarian purposes. *See* RCW 9.94A.010(5).

Sentencing Bernhard to Teen Challenge also meets the SRA's goal of just retribution. First, the sentence serves the legislative intent to devise sentences that "emphasize confinement for the violent offender and alternatives to total confinement for the nonviolent offender." RCW 9.94A-.040(5). Sentencing nonviolent offenders, whose criminal activity resulted directly from their substance addiction, to facilities with strenuous programs, such as Teen Challenge, "[p]romote[s] respect for the law by providing punishment which is just". RCW 9.94A.010(2). Second, the 12–month sentence is at the top end of the durational range allowed for second degree burglary, and the nature of the Teen Challenge program amounts to a sentence of near total confinement. As a result, Bernhard's sentence also constitutes punishment in proportion to the offense committed. RCW 9.94A.010(1).

In sum, the SRA continues to provide trial courts with a measure of discretion, but changes "the parameters in which the discretion can be exercised." *State v. Ammons,* 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796 (1986). For felons sentenced to more than 1 year, trial courts have no discretion to select the place of confinement. When a sentence is imposed for 1 year or less, the trial court has the limited discretion to select from the list of available county facilities as defined by RCW 70.48.020. Although Teen Challenge's status as a special detention facility under RCW 70.48.020(3) remains undetermined, the trial court correctly invoked its authority to sentence Bernhard pursuant to the exceptional sentence provision. RCW 9.94A-.120(2). Exceptional sentences outside the standard range of community supervision conditions become appropriate when "considering the purpose of [the SRA] there are sub-

stantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). In Bernhard's case, we find that the SRA's purpose is best served by sentencing Bernhard to the near total confinement of the Teen Challenge treatment program. Thus, we affirm the trial court's sentence, requiring that it be imposed as an exceptional condition of a community supervision sentence imposed pursuant to RCW 9.94A.383.

PEARSON, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.