[No. 55315-7. En Banc. July 13, 1989.]

THE STATE OF WASHINGTON, *Petitioner*, v. ARLISS YVONNE SHOVE, *Respondent*.

*Donald C. Brockett, Prosecuting Attorney,* and *Dennis J. O'Shea, Deputy,* for petitioner.

*Bevan J. Maxey,* for respondent.

DURHAM, J.—In this case, the trial court modified its judgment and sentence and released the defendant after she had served only 5 of the 12 months originally imposed. Because the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, does not allow for a judicial modification of this

nature, we reverse. In so holding, we overrule dicta in *State v. Bernhard,* 108 Wn.2d 527, 741 P.2d 1 (1987) which may suggest otherwise.

Arliss Shove pleaded guilty to four counts of first degree theft. The trial court sentenced her to 365 days of partial confinement at a work release center. She was also required to pay approximately $84,000 in restitution over a 10–year period.

Shove began serving her sentence at a Spokane County work release facility. Although she was required to spend each night at the center, she was allowed to leave during the day so she could remain employed. *Cf.* RCW 9.94A-.180(1) (work release inmates are to be confined at the facility for at least 8 hours per day). Six days a week, Shove would leave the center at 3:30 a.m., travel 35 miles to work at her family–owned bakery in Rathdrum, Idaho, and return to the center at approximately 7 p.m.

After Shove had served approximately 5 months of her sentence, she asked the trial court to reduce her sentence so that she could be immediately released. In support thereof, Shove submitted an affidavit from a corrections officer expressing doubts that Shove would be able to maintain the demanding schedule of paying work release fees while serving partial confinement at the center. The officer was concerned that if Shove were unable to pay her work release fees, she would be taken off the work release program, her business would collapse, and she would lose her ability to pay restitution.

Based on this showing, the trial court ordered Shove's immediate release. The court amended the original judgment in the following particulars. The court declared an exceptional sentence, changed Shove's sentence to a sentence of 10 years, suspending all but the time already served, and imposed 10 years of probation.

The State appealed the sentence modification, arguing that the trial court lacked jurisdiction under the SRA to amend Shove's sentence in this manner. The Court of Appeals held that the trial court had jurisdiction to modify

Shove's sentence, relying on dicta from this court in *State v. Bernhard, supra. State v. Shove,* 51 Wn. App. 538, 754 P.2d 1017 (1988). This court accepted review.

## I

Washington sentencing laws are structured as a system of determinate sentencing. *See* Washington Sentencing Guidelines Comm'n, *Implementation Manual,* Introduction at v (1988). Under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, a trial court is directed to impose on those convicted of crimes

> a sentence that states with exactitude the number of actual years, months, or days of total confinement, of partial confinement, of community supervision, the number of actual hours or days of community service work, or dollars or terms of a fine or restitution.

RCW 9.94A.030(12). This "determinate sentence" is ascertained at the time of sentencing, and generally is not subject to later change.

> The [SRA] is based on a just deserts philosophy under which sentences are to be based primarily on considerations of the seriousness of the crime of conviction and the prior criminal history. *Since these factors can be known at the time of sentencing, there is no need to grant the power to modify the terms of sentences at some later date.*

(Footnotes omitted. Italics ours.) D. Boerner, *Sentencing in Washington* § 4.1, at 4–1 (1985).

The SRA permits modification of sentences only in specific, carefully delineated circumstances. See D. Boerner, at 4–1 n.6. Authority for increasing an offender's duration of commitment, for example, is provided by RCW 9.94A-.200(2)(b). Early release from confinement, on the other hand, is provided for in RCW 9.94A.150.[1]

---

[1]Former RCW 9.94A.150 provides:

"No person serving a sentence imposed pursuant to this chapter shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:

"(1) The terms of the sentence may be reduced by earned early release time in accordance with procedures developed and promulgated by the department. The earned early release time shall be for good behavior and good performance, as

■■ Neither of these provisions provides authority for the reduction of Shove's term of incarceration. Nor can authority be implied from the SRA's general structure or purposes. Indeed, the implication from the SRA's underlying policy that criminal sentences fit the offender and his offense, and from the careful enumeration of the circumstances where early release is appropriate, is to the contrary. *Cf. Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 404, 573 P.2d 10 (1977) ("Where a statute provides for a stated exception, no other exceptions will be assumed by implication."); *In re S.B.R.,* 43 Wn. App. 622, 625, 719 P.2d 154 (1986) ("[E]xpress exceptions in a statute exclude all other exceptions."), *review denied,* 108 Wn.2d 1009. We recognized as much in *State v. Rogers,* 112 Wn.2d 180, 183, 770 P.2d 180 (1989) where we held that RCW 9.94A.150 "prohibits early release absent existence of one of the statutory exceptions." Accordingly, we conclude that the trial court lacked authority to modify Shove's sentence.

---

determined by the department. In no case shall the aggregate earned early release time exceed one–third of the sentence;

"(2) An offender may leave a correctional facility pursuant to an authorized furlough or leave of absence. In addition, offenders may leave a correctional facility when in the custody of a corrections officer or officers;

"(3) The governor, upon recommendation from the clemency and pardons board, may grant an extraordinary release for reasons of serious health problems, senility, advanced age, extraordinary meritorious acts, or other extraordinary circumstances;

"(4) If the sentence of confinement is in excess of twelve months but not in excess of three years, no more than the final three months of the sentence may be served in partial confinement designed to aid the offender in finding work and reestablishing him or herself in the community. If the sentence of confinement is in excess of three years, no more than the final six months of the sentence may be served in such partial confinement;

"(5) The governor may pardon any offender;

"(6) The department of corrections may release an offender from confinement any time within ten days before a release date calculated under this section; and

"(7) An offender may leave a correctional facility prior to completion of his sentence if the sentence has been reduced as provided in RCW 9.94A.160 [dealing with emergencies due to overcrowding of correctional facilities]."

The Court of Appeals relied on the following statement from one of this court's recent cases: "[T]he power to sentence a defendant to a low–security special detention center pursuant to RCW 70.48.400, implies the power to alter the sentence if the facility does not suit the defendant's needs." *State v. Bernhard,* 108 Wn.2d 527, 535, 741 P.2d 1 (1987).

Because sentence modification was not at issue in *Bernhard,* however, that statement is dicta. The question presented in *Bernhard* was whether a sentencing judge or corrections officials are authorized to select from among the different types of incarcerative facilities to which offenders may be committed under RCW 70.48.400. We held that this authority rests with the sentencing judge.[2]

As is often true of dicta, it now appears that the *Bernhard* statement in question was ill–considered. The claim that the power to set a sentence carries with it the power later to modify that sentence ignores the importance of finality in rendered judgments. Final judgments in both criminal and civil cases may be vacated or altered only in those limited circumstances where the interests of justice most urgently require. *See* RCW 9.94A.150; RCW 9.94A-.260; CrR 7.8(b); CR 60(b). Modification of a judgment is not appropriate merely because it appears, wholly in retrospect, that a different decision might have been preferable. *Cf. Burlingame v. Consolidated Mines & Smelting Co.,* 106 Wn.2d 328, 335–36, 722 P.2d 67 (1986).

Moreover, the *Bernhard* dicta would allow trial courts to exercise discretion without any criteria to guide their decisions. A principal purpose of the SRA is to establish guidelines for sentencing judges' discretion, thereby making the

---

[2]*Bernhard's* discussion of sentence modification was triggered by one of the State's policy arguments. The State argued that the appropriate facility should be initially selected by the same entity responsible for changing that placement if subsequent circumstances required, and that only corrections officials were authorized to change a placement. *State v. Bernhard,* 108 Wn.2d 527, 535, 741 P.2d 1 (1987). In the statement quoted above, the court disposed of this argument by concluding that sentencing judges were authorized to change a placement that was causing problems.

exercise of that discretion more principled and providing criteria for review by appellate courts. *See* D. Boerner, at 1–1, 1–2. Respectful of that purpose, this court has always interpreted the SRA in a manner that ensures the structuring of trial court discretion.[3] The *Bernhard* dicta represents an aberration of these important sentencing principles and is rejected.[4]

We hold that SRA sentences may be modified only if they meet the requirements of the SRA provisions relating directly to the modification of sentences. The trial court's reduction of Shove's sentence does not meet these requirements.

## II

One other aspect of the trial court's actions merits attention. By way of an exceptional sentence, the trial court ordered Shove to serve 10 years' confinement, but suspended all of that term except for the time already served. The court also imposed a 10–year probationary period. This particular sentence violates the SRA in two separate ways.

■ First, the SRA has done away with "probation" as such, and replaced it with the concept of community supervision, under which trial courts are more restricted in their sentencing options.[5] *See* RCW 9.94A.383; RCW 9.94A-.030(4); D. Boerner, at 4–4.

---

[3]We have allowed trial courts discretion in sentencing only where the SRA so authorized, and have crafted careful guidelines to contain these limited circumstances. *State v. Nordby*, 106 Wn.2d 514, 723 P.2d 1117 (1986); *State v. Oxborrow*, 106 Wn.2d 525, 723 P.2d 1123 (1986); *State v. Armstrong*, 106 Wn.2d 547, 723 P.2d 1111 (1986).

[4]Implementation of the *Bernhard* dicta would not be limited to a mere handful of cases. Under the theory that the authority to impose one of a number of sentencing options implies a subsequent authority to modify that sentence, sentencing judges would have unfettered discretion to modify sentences, not only when the sentence involves assignment to work release (as in this case), or confinement for less than 1 year (as in *Bernhard*), but in any number of circumstances in which sentencing judges exercise sentencing discretion.

[5]For example, only for first–time offenders does the SRA authorize community supervision sentences that include a prohibition against committing new

The more important issue, however, concerns suspended sentences. With one exception not applicable here, the SRA abolished the suspending and deferring of sentences. RCW 9.94A.130. The Court of Appeals, however, analyzed this issue somewhat differently, holding that "the power to suspend or defer and order community supervision only exists for sentences of 1 year or less." *State v. Shove,* 51 Wn. App. 538, 543, 754 P.2d 1017 (1988). In justifying this conclusion, the court apparently relied on former RCW 9.94A.383 which provides:

> On all sentences of confinement for one year or less the court may impose up to one year of community supervision. For confinement sentences, unless otherwise ordered by the court, the period of community supervision begins at the date of release from confinement. For nonconfinement sentences, the period of community supervision begins at the date of entry of the judgment and sentence.

Since this provision does not expressly authorize suspended sentences, and given the prohibition against such sentences in RCW 9.94A.130, it should not be construed as doing so. Our conclusion is not changed by the legislative bill report that characterized RCW 9.94A.383 as creating "express authority to suspend or defer the sentences of felons sentenced to a year or less in jail." *See* Final Bill Report, SHB 1247, 48th Legislature (1984), Synopsis as Enacted, at 3, *quoted in Bernhard,* at 539. As we have already recognized, this statement exaggerates the effect of the statute, *Bernhard,* at 539–40, and merely reflects the fact that the effect of imposing a term of community supervision will in some instances be similar to that of suspending or deferring a sentence. Nevertheless, given the restrictions that the SRA places on the proper conditions of community supervision, see RCW 9.94A.030(4), RCW

---

offenses, and only first–time offenders and sexual offenders can be required to take affirmative steps toward rehabilitation, such as participating in medical treatment programs. RCW 9.94A.030(4), (7); RCW 9.94A.120(5), (7); *see* D. Boerner, *Sentencing in Washington* § 4.4 (1985). Prior to the enactment of the SRA, either of these conditions could have been required of any defendant as part of a probationary sentence. *See* D. Boerner, §§ 4.4, 4.5.

9.94A.120(5),[6] the effects of the two will differ in certain cases. Therefore, trial courts should follow the statutory mechanism of community supervision without resorting to the abolished practice of suspending sentences.

In summary, we hold that the trial court lacked authority to reduce Shove's sentence, and its order doing so is reversed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, and SMITH, JJ., concur.

---

[6]See examples of restrictions on community supervision described in footnote 5. The conditions imposed in suspending or deferring a sentence under pre–SRA law were not restricted in this manner.