[No. 55988–1. En Banc. October 11, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. FRANCIS LESTER ESTRELLA, *Respondent.*

*Donald C. Brockett, Prosecuting Attorney,* and *G. Ward McAuliffe* and *James R. Sweetser, Deputies,* for appellant.

*Paul J. Wasson,* for respondent (appointed counsel for appeal).

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether the trial court properly imposed an exceptional sentence *below* the standard range. We hold that it did not, and reverse and remand for resentencing.

On September 25, 1988, Francis Lester Estrella, the defendant herein, broke into a farm supply store in Spokane. When the police responded to the resulting power outage alarm, they saw the defendant dive into a pile of tires. The police handcuffed him, searched his backpack and found 14 cartons of cigarettes and more than $5,000 in cash. They also found burglary tools.

The defendant was arrested and charged with second degree burglary. The prosecuting attorney agreed not to file other charges known at the time in exchange for the defendant's plea of guilty to the single count of second degree burglary. The State also agreed to recommend a sentence within the standard range. Because of a 20–year history of burglaries, the defendant's offender score was 14. A score of 9 or more under the seriousness range of 2 results in a standard sentence range of 43 to 57 months. The prosecuting attorney recommended the maximum standard range term of 57 months, as did the presentence report. The prosecuting attorney added, "I think any less than the maximum term, 57 months, we'll be seeing Mr. Estrella back again."

At the initial sentencing hearing on December 16, 1988, defense counsel described the defendant as "institutionalized". Defense counsel told the trial court that his client needed the help of the parole system or a work release program to get him into a job and out of penal institutions. The defendant also made a personal request for some type of work release. The trial court ordered a continuance so that counsel could check into alternatives to prison for the defendant.

On January 18, 1989, court reconvened, and defense counsel requested a second continuance so that he could

look into a Spokane organization called Interaction Transition. One of its stated main goals is to enable ex–offenders to make a successful and permanent transition from prison to the community. Defense counsel requested a continuance so that he could contact Interaction Transition and determine if the defendant would be eligible for its programs. The court granted the continuance.

When the sentencing hearing reconvened on February 22, 1989, defense counsel reported that a representative of Interaction Transition had interviewed the defendant and was willing to accept him into the program. Defense counsel also stated that a Spokane business executive was willing to help the defendant obtain employment.

The trial court decided to "take a chance", as the court expressed it, on the defendant and impose an exceptional sentence. The court sentenced him to 1 year in jail with credit for time served, followed by 1 year of work release only if the defendant had a job (during which time he would work with the business executive and Interaction Transition), and then 2 years of supervision by a corrections officer. The court also ordered the defendant to pay restitution.

In its written decision, the trial court found that the defendant had received little formal education, and that during every incarceration he had engaged in various educational opportunities in an attempt to obtain employment upon release. The court also found that the defendant had been trained in several vocational fields and upon release was never involved in any program to assist him in obtaining employment and readjusting into society. The court further found the defendant "very willing to obtain treatment," and had no prior self–help opportunities. He "appears to be a good risk not to re–offend if he can be worked back into society gradually and under direction and supervision." The court also found that the defendant should be afforded an opportunity at gradual release and reintegration into society. Based on these findings, the trial court concluded that substantial and compelling reasons

existed to depart from the sentencing guidelines and impose an exceptional sentence below the standard range.

The State appealed the defendant's sentence directly to this court and we granted review. One issue is presented.

## ISSUE

Does the record support the trial court's reasons for imposing an exceptional sentence below the standard range, and are those reasons legally sufficient?

## DECISION

CONCLUSION. The findings of fact used to justify the exceptional sentence in this case are not sufficiently substantial or compelling to support an exceptional sentence of less than the standard range.

With but three exceptions, the Sentencing Reform Act of 1981 (SRA) requires a trial court to sentence a criminal offender within a presumptive, or standard, range.[1] Two of the exceptions deal with first–time and sexual offenders and are not here at issue.[2] The third exception allows a trial court to impose an *exceptional* sentence which may exceed or fall below the presumptive range.[3] The court may impose an exceptional sentence if it finds substantial and compelling reasons for doing so.[4] Those reasons must include factors other than those considered in computing the presumptive range for the offense.[5] Whenever an exceptional sentence is imposed, the sentencing court must

---

[1]RCW 9.94A.370; Altman, *Criminal Sentencing,* 23 Gonz. L. Rev. 655, 660 (1987–1988).

[2]*See* RCW 9.94A.120(5), (7)(a).

[3]RCW 9.94A.120(2); Altman, 23 Gonz. L. Rev. at 660.

[4]RCW 9.94A.120(2); *State v. Pennington,* 112 Wn.2d 606, 608, 772 P.2d 1009 (1989).

[5]*State v. Nordby,* 106 Wn.2d 514, 518, 723 P.2d 1117 (1986); *State v. Pascal,* 108 Wn.2d 125, 135–36, 736 P.2d 1065 (1987).

set forth the reasons for its decision in written findings of fact and conclusions of law.[6]

■■■ An exceptional sentence is subject to appellate review under RCW 9.94A.210(4), which provides as follows:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Subsection (b) was not briefed by either party so is not at issue.[7] Under subsection (a), there are two inquiries.

The first subsection (a) inquiry is whether the trial court's reasons for imposing an exceptional sentence are supported by the record. This is a factual inquiry and the court's findings will be upheld unless they are clearly erroneous.[8] The defendant argues, however, that the State's challenge to the findings of fact was not properly raised and should not be considered. RAP 10.3(g) provides that a separate assignment of error for each allegedly improper finding of fact must be included with reference to the finding by number. The State did not make separate assignments of error for each finding in its brief. We have stated, however, that where the nature of the challenge is clear and the challenged finding is set forth in the appellate brief, the appellate court may consider the merits of the challenge.[9] Here, the State's brief sets forth each challenged finding, and the nature of its challenge is clear.

---

[6]RCW 9.94A.120(3); *State v. Nelson*, 108 Wn.2d 491, 495, 740 P.2d 835 (1987).

[7]*See State v. Bernhard*, 108 Wn.2d 527, 542, 741 P.2d 1 (1987), *overruled in part on other grounds in State v. Shove*, 113 Wn.2d 83, 776 P.2d 132 (1989); *Nelson*, 108 Wn.2d at 501.

[8]*Pennington*, 112 Wn.2d at 608; *Nordby*, 106 Wn.2d at 517–18.

[9]*State v. Williams*, 96 Wn.2d 215, 220, 634 P.2d 868 (1981); *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 709–10, 592 P.2d 631 (1979).

The State first challenges the trial court's finding that the defendant received little formal education, and points to a long list of academic courses that the defendant completed while in prison. The court's finding is supported by the record, however, since the defendant attended school only through the 8th grade. His prison courses do not constitute formal education.

The State also challenges the court's finding that the defendant has never been involved in any program to assist him in obtaining employment. The State contends that the defendant's prison training equalled such a program. What the trial court actually found, however, was that the defendant has never been involved in any program to assist him *upon release*. The record indicates that the defendant has not had postrelease assistance in finding a job.

The State challenges the trial court's finding that the defendant has never had any self–help opportunities and appears to be a good risk not to reoffend if he can be gradually reintegrated into society under direction and supervision. The State argues that the "good risk" finding is a legal conclusion. The trial court conditioned the "good risk" finding upon the presence of supervision. Both the representative from Interaction Transition and the Spokane business executive thought that the defendant could succeed with their help. Thus, there was evidence in the record to support this observation regarding the defendant. It does not appear to be either a conclusion of law or clearly erroneous.

The State next challenges the trial court's finding that the defendant should be afforded an opportunity at gradual release and reintegration into society. The State argues that this is a legal conclusion that should not be considered in determining whether the defendant's exceptional sentence is justified; we agree.

The State's final challenge is to the trial court's finding that the defendant's offender score is 9. Again we agree; this finding is incorrect, as the defendant's offender score is 14.

Thus, we reverse two of the court's six findings of fact as clearly erroneous.

 We next consider *the second subsection (a) inquiry* to be made under RCW 9.94A.210(4)(a). This requires the reviewing court to determine, as a matter of law, whether the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range.[10] "Under this standard the reviewing court will weigh the reasons given against the purposes of the Sentencing Reform Act and determine whether the former are consistent with the latter."[11] The goals of the SRA are to ensure that the punishment for an offense is proportionate to the seriousness of the offense and the offender's criminal history; promote respect for the law by providing punishment that is just; be commensurate with the punishment imposed on others committing similar offenses; protect the public; offer the offender an opportunity to improve him or herself; and make frugal use of the State's resources.[12] The first three of these purposes articulate principles of punishment, thus supporting this court's observation that the paramount purpose of the SRA is punishment.[13] The SRA lists aggravating and mitigating factors to be considered when imposing an exceptional sentence, but this list is illustrative rather than exclusive.[14]

Under the SRA, opportunities to impose work release, treatment, or community supervision as part of a standard sentence are limited. While such conditions may be imposed in standard range sentences of 1 year or less and

---

[10]*Nordby,* 106 Wn.2d at 518; *Pennington,* 112 Wn.2d at 609.

[11]D. Boerner, *Sentencing in Washington* § 9.32, at 9–71 (1985); RCW 9.94A-.120(2).

[12]RCW 9.94A.010.

[13]*Pennington,* 112 Wn.2d at 611 (citing *State v. Rice,* 98 Wn.2d 384, 393, 655 P.2d 1145 (1982)).

[14]RCW 9.94A.390; *Bernhard,* 108 Wn.2d at 543; D. Boerner § 9.32, at 9–71.

for some first–time and sexual offenders, the SRA has a far lesser commitment to rehabilitation than did the previous indeterminate sentencing system.[15] One text on the subject explains this change:

> With the exception of the narrowly defined categories of "first–time offenders" and "sex offenders," the Legislature has clearly rejected the fundamental tenet of the rehabilitative ideal that the cause of a defendant's criminality can be diagnosed and a treatment program required which will eliminate the causes of the criminality and thus prevent future crimes. . . . the formerly common conditions of participation in treatment programs, attendance at school or maintaining employment may no longer be imposed.

(Footnote omitted.) D. Boerner, *Sentencing in Washington* § 4.4, at 4–5 (1985).

■ We do not dispute the contention that under some circumstances rehabilitative conditions may be imposed as part of an exceptional sentence.[16] We do emphasize, however, that such conditions may be made part of an exceptional sentence only if the reasons for doing so are substantial and compelling.[17]

In *State v. Pennington*, 112 Wn.2d 606, 772 P.2d 1009 (1989), we did not find the reasons given to be supportive of an exceptional sentence that consisted primarily of rehabilitative conditions. The defendant in *Pennington* pleaded guilty to first degree robbery, and his standard sentence range was 31 to 41 months. After the trial court found that the defendant's dependency on drugs substantially contributed to his commission of the crime, that additional offenses were likely unless the defendant cured his drug problem, and that a standard range sentence would not

---

[15]*See* D. Boerner § 2.5(c), at 2–35, 2–36; Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* I–34 to I–41 (1988); D. Fallen, *Sentencing Practices Under the Sentencing Reform Act* 30–43 (1987).

[16]*See Bernhard,* 108 Wn.2d at 544–45; *Nelson,* 108 Wn.2d at 504–05.

[17]RCW 9.94A.120(2); *Bernhard,* 108 Wn.2d at 544–45; *Nelson,* 108 Wn.2d at 499.

provide any drug treatment, the court imposed an exceptional sentence of 12 months in jail to be followed by 6 months' inpatient drug treatment and 24 months of community supervision.[18]

We reversed, observing that an exceptional sentence is appropriate only when the circumstances of the crime distinguish it from other crimes of the same statutory category.[19] We found no distinguishing circumstances in *Pennington,* stating that "a drug or alcohol problem in and of itself is not a substantial or compelling reason justifying imposition of an exceptional sentence".[20]

In the present case, neither party contends that the circumstances of the defendant's burglary distinguish it in any way from other second degree burglaries except that, if anything, it was more cunning and sophisticated than most. The defendant in this case told officers that he bypassed the alarm system by cutting the phone lines after reading a book on bypassing alarms and opening safes. Nor is it extraordinary that the defendant had trouble finding a job after leaving prison. Yet the defendant's employment problems and criminal behavior are the primary reasons behind the exceptional sentence below the standard range that the trial court imposed. The defendant would have us approve a sentence of *less* than the standard range because of his extensive criminal history. To affirm the imposition of a lesser sentence (consisting largely of rehabilitative conditions) because of the defendant's repeated criminal offenses would mean, in essence, the judicial repeal of the premise upon which the legislatively enacted SRA is based.

In sum, we do not find the reasons given in support of the exceptional sentence imposed in this case to be either substantial or compelling. Moreover, we must bear in mind the need to review an exceptional sentence to determine if

---

[18]*State v. Pennington,* 112 Wn.2d 606, 607–09, 772 P.2d 1009 (1989).

[19]*Pennington,* 112 Wn.2d at 610; *see also* D. Boerner § 9.6, at 9–13.

[20]*Pennington,* 112 Wn.2d at 611.

the reasons therefor are consistent with the purposes of the SRA. We perceive no way in which the reasons supporting the sentence imposed in this case are consistent with the SRA's primary purpose of punishment.

Reversed and remanded for resentencing within the standard range.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, DURHAM, SMITH, and GUY, JJ., concur.