[Nos. 13262-1-II; 13556-6-II.    Division Two.    September 26, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTOINE L. GUERIN, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES G. PERKINS, *Appellant*.

*Steven B. Dixon* and *Crawford, McGilliard, Peterson &
Yelish,* for appellants (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Irene K. Asai,
Deputy,* for respondent.

PETRICH, J. — In separate proceedings, Antoine L. Guerin
and Charles G. Perkins were convicted of committing sexual
offenses.[1] Guerin appealed his exceptional sentence of 71
months in prison, with 15 years of "community placement
supervision". Perkins appealed the trial court's admission of
child hearsay, its determination of child competency, and his
exceptional sentence of 68 months with "community place-
ment supervision" for the remainder of the 10-year statu-
tory maximum sentence. The Court of Appeals com-
missioners affirmed each sentence under RAP 18.15,

---

[1] Guerin pleaded guilty to charges of first degree rape (count 1) and indecent
liberties (count 2). The SRA standard range for count 1 is 36 to 48 months in
prison; the maximum term is life. A jury found Perkins guilty of first degree
child molestation. The SRA standard range is 26 to 34 months; the maximum
term is 10 years.

Accelerated Review of Adult Sentencings. We granted each defendant's motion to modify and consolidated their appeals on one issue only: the validity of the imposition of an exceptional term of community placement. We will also consider the trial issues of child hearsay and child competency in Perkins's appeal.[2] Regarding Perkins's appeal, we affirm the trial court in all respects. In Guerin's appeal, we reverse the sentence and remand for resentencing.

We reach first the issue in the consolidated appeal: the validity of the imposition of exceptional terms of community placement.[3]

Community placement is provided for in RCW 9.94A-.120(8)(a), which requires the trial court to sentence an offender to 1 year of community placement for any of the crimes listed therein. One such crime is "an offense categorized as a sex offense". Consequently, when a trial court sentences a person for a sex offense committed on or after July 1, 1988, "the court shall in addition to the other terms of the sentence, sentence the offender to a one-year term of community placement . . .." RCW 9.94A.120(8)(a).

■ The statutory scheme leaves unclear (1) whether trial courts can require a term of community placement in an exceptional sentence and (2) whether they can impose an exceptional duration of community placement. Our role in

---

[2]In oral argument, Perkins's counsel addressed the validity of the sentence. However, he waived his right to oral argument on the trial issues.

[3]" 'Community placement' means a one-year period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (post release supervision) or at such time as the offender is transferred to community custody in lieu of earned early release. Community placement may consist of entirely community custody, entirely postrelease supervision, or a combination of the two." Former RCW 9.94A.030(4) (renumbered subsection (5) by Laws of 1989, ch. 252, § 2).

Here, in each case, the trial court sentenced the defendant to an exceptional term of "community placement supervision". We consider this to be community placement rather than community supervision because it is scheduled to begin after each defendant completes his term of total confinement, which is a characteristic unique to community placement. See former RCW 9.94A.030(4), (6), (12); RCW 9.94A.120(8)(a).

construing the sentencing scheme is to discover and effectuate the Legislature's intent. *State v. Bernhard*, 108 Wn.2d 527, 533, 741 P.2d 1 (1987), *overruled on other grounds in State v. Shove*, 113 Wn.2d 83, 776 P.2d 132 (1989).

*State v. Bernhard, supra,* is analogous. There, the Supreme Court held that a sentencing judge may employ an exceptional sentence to depart from the strictures ordinarily applicable to both the duration and conditions of community *supervision* under a standard range sentence. *Bernhard*, 108 Wn.2d at 537.[4] Once the trial court finds grounds for an exceptional sentence, it is not limited to a length of 2 years for community supervision, *see* RCW 9.94A.120(7)(a), 9.94A-.383, and it is not limited to imposing conditions that qualify as "crime-related prohibitions", *see* former RCW 9.94A-.030(6), (9). *Bernhard*, at 538, 540. The *Bernhard* court reasoned that the Legislature intended that the exceptional sentencing provisions of the Sentencing Reform Act of 1981, RCW 9.94A (SRA) enable trial courts to tailor sentences for individual situations that do not fit the predetermined structure. *Bernhard*, at 540-42.

█ █ Although *Bernhard* deals with exceptional conditions of community supervision, RCW 9.94A.120(7), the similarities between community supervision and community placement, RCW 9.94A.120(8), allow us to apply the *Bernhard* rationale here. Both community supervision and community placement provisions extend the trial court's discretionary range to the duration and conditions when a sentence is imposed. *See, e.g., Bernhard*, 108 Wn.2d at 538. Also, both authorize imposition of a term of community supervision or placement designed to further the protection and personal self-improvement objectives of the SRA.

---

[4]We note that the community supervision must first be permitted by statute. As we stated in *State v. Skillman*, 60 Wn. App. 837, 841, 809 P.2d 756 (1991), "the Supreme Court held (in *Bernhard*) that where community supervision was authorized as an element of the sentence, the trial court could impose reasonable conditions of supervision not listed in the authorizing statute. It did not hold that the trial court could include community supervision as an element of a sentence when there was no statutory authority to do so."

To hold otherwise would probably render meaningless RCW 9.94A.120(11), which provides that

[e]xcept as provided under RCW 9.94A.140(1) and 9.94A-.142(1), a court may not impose a sentence providing for a term of confinement or community supervision or community placement which exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW.

This statute only makes sense if a trial court can impose an exceptional term of community placement that does not exceed the statutory maximum. We avoid construing a statute in such a way that renders its enactment meaningless. *Kirk v. Moe*, 114 Wn.2d 550, 554, 789 P.2d 84 (1990).

Thus, we hold that trial courts may impose an exceptional term of community placement that does not exceed the statutory maximum when community placement is authorized.[5] We affirm Perkins's sentence under this holding.

However, the facts in Guerin's case require our reversal of his sentence. The community placement statute only applies to offenses committed on or after July 1, 1988. RCW 9.94A.120(8). Guerin committed sexual offenses on or about June 30, 1988. Because he committed the offenses before the statute took effect, the trial court had no statutory authority to require community placement. *State v. Skillman*, 60 Wn. App. 837, 841, 809 P.2d 756 (1991) (trial courts cannot impose community placement unless it is an authorized element of the sentence). Thus, we remand for resentencing in Guerin's case.

Next, we address Perkins's contention that the trial court erred in holding that a child witness was competent to testify and in admitting child hearsay statements. A factual recitation is unnecessary because the trial court conducted

---

[5] *State v. Stevens*, 58 Wn. App. 478, 504, 794 P.2d 38, *review denied*, 115 Wn.2d 1025 (1990) invalidated a requirement to complete a postrelease sexual deviancy treatment plan. We decline to follow *Stevens* for two reasons. First, the State in *Stevens* conceded the issue of whether there was authority to impose such treatment. *Stevens*, at 503. Second, the *Stevens* court relies on authority that construes the imposition of community *supervision* as part of a standard range sentence. *Stevens*, at 504.

the appropriate pretrial hearings and entered detailed findings covering the competency and hearsay issues in those hearings. Perkins has challenged none of them.

The findings show that the trial court correctly applied the factors for determining competency outlined in *State v. Allen*, 70 Wn.2d 690, 424 P.2d 1021 (1967), and the factors for ruling on the admissibility of child hearsay set forth in *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984). Perkins's failure to challenge these findings forecloses review of his contentions on these issues, except on the issue of the child victim's testimonial competence. *State v. Harris*, 106 Wn.2d 784, 790, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987). *See also State v. Jones*, 112 Wn.2d 488, 499, 772 P.2d 496 (1989); *State v. Hunnel*, 52 Wn. App. 380, 382, 760 P.2d 947 (1988) (rule applies even though no rule or statute required findings).

Perkins contends that the child did not have an independent recollection of the event *at the time of trial*. As noted above, the trial court's findings support its conclusion that at the time of the pretrial hearings, the child was competent to testify. However, at trial, Perkins made a new objection regarding the child's competency. He asked the trial court to reconsider its determination of child competency because the child demonstrated on cross examination that she did not have an independent recollection of the event.

Perkins properly renewed his objection at trial that the child may have become incompetent between the time of the pretrial hearings on September 20, 1989, and November 6, 1989, and the time of trial on November 9, 1989, and November 13, 1989. There, he objected on grounds of inadequate independent recollection; therefore, we limit our review to this factor.

During direct examination at trial, the child indicated that "Daddy" touched her inside her underwear with his hands, at home, while Mommy was at work. He told her that she would get a spanking if she told Mommy. This testimony was consistent with her testimony in the pretrial

hearings. On cross examination, the child was unable to answer most of defense counsel's questions.

█ We agree with the trial court and find that the child was competent to testify at trial because her previous testimony on direct examination established her independent recollection. Her inability to remember details on cross examination can be attributed to fatigue or whim. Consequently, her ability to independently recollect the incident on cross examination went to weight rather than admissibility. *See Jenkins v. Snohomish Cy. PUD 1*, 105 Wn.2d 99, 103, 713 P.2d 79 (1986). As such, there is no reversible error.

We affirm Perkins's conviction and sentence. We reverse Guerin's sentence and remand for sentencing.

WORSWICK, C.J., and ALEXANDER, J., concur.

Review denied at 118 Wn.2d 1015 (1992).