**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE    FEB 0 1 2018

CHIEF JUSTICE

This opinion was filed for record
at  8:00 am  on  Feb 1, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,     )
                         )
        Respondent,      )        No. 94439-3
                         )
    v.                   )
                         )
ERIK GRANT PETTERSON,    )
                         )        Filed    FEB 0 1 2018
        Petitioner.      )
_____)

OWENS, J. — Erik Petterson has been serving a term of community custody under a special sex offender sentencing alternative (SSOSA) for over 15 years. RCW 9.94A.670. After Petterson successfully completed treatment, the court removed most of his community custody conditions. The Washington State Department of Corrections (Department) now seeks to ensure that while Petterson is on community custody, he is required to comply with department-imposed conditions. At issue here is whether courts must require this condition and whether courts have authority to modify community custody conditions after terminating treatment.

*State v. Petterson*
No. 94439-3

## FACTS AND PROCEDURAL HISTORY

Petterson received a sentencing alternative under the SSOSA statute when he pleaded guilty to child molestation in the first degree in 2002. Clerks Papers (CP) at 6-12. The superior court ordered 68 months of confinement with 62 months suspended for the maximum term of life. *Id.* In accordance with the SSOSA statute, the suspended sentence was conditioned on community custody for the length of the maximum term. *Id.* For Petterson, this meant a lifetime of community custody. *Id.* One of the conditions required Petterson to comply with any conditions imposed by the Department (department-compliance condition). *Id.*

The department-compliance condition was suspended after a series of proceedings from 2005 to 2008. In October 2005, Petterson appeared for his treatment termination hearing, which is mandated by the SSOSA statute as a time to review community custody conditions and treatment. RCW 9.94A.670.[1] The court found that Petterson had successfully completed treatment and, upon a joint request, terminated his treatment. CP at 14-16. The court mistakenly also terminated his community custody as a result of a scrivener's error. *Id.* The mistake was subsequently discovered, and the State filed a motion to amend the order in December

---

[1] Since Petterson's sentencing in 2001, the SSOSA statute has been reorganized and renumbered. There have been no major substantive changes. The one notable change is the addition of a mandatory annual treatment review hearing. LAWS OF 2004, ch. 176, § 4(4)(d). The court will thus refer to the current statutory provisions throughout this opinion.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2006. CP at 17. The court granted the amendment in March 2007, and the Court of Appeals affirmed. CP at 22-24, 35-39.

The superior court held a hearing in April 2008 to determine next steps in light of the Court of Appeals' decision. Verbatim Report of Proceedings (VRP) (Apr. 18, 2008) at 4-10. At this hearing, Petterson moved to modify his community custody. *Id.* The court deferred a final decision until Community Corrections Officer (CCO) David Payne could be present. *Id.* at 11-12. The court held the next hearing on May 5, 2008, with CCO Payne but ultimately decided to further delay the decision to allow the Attorney General's Office to be present. VRP (May 5, 2008) at 11-12. The court reconvened on May 30, 2008, but no one from the Attorney General's Office appeared. VRP (May 30, 2008) at 1. The State told the court that the prosecutor's office had communicated with the Department and the Indeterminate Sentence Review Board and neither body was taking a position. *Id.* at 4. The court ruled that it had the authority to modify community custody conditions and signed an order suspending all of Petterson's conditions except for two: (1) obey all laws, and (2) update the Department of any change in address or phone number. CP at 40.

Since that series of proceedings, Petterson has maintained strict compliance with his remaining conditions. CP at 105-18. He also reported to his CCO 13 times between 2009 and 2015 even though he was not required to do so. *Id.* The court ordered that he be removed from the sex offender registry in 2013 after the

Department filed a report detailing Petterson's compliance. CP at 43. Despite his record of complete compliance and successfully completing treatment, the Department's position on Petterson's conditions drastically changed when he moved to King County and his case was transferred to a new CCO.

Petterson moved to King County in 2014, and his new CCO proposed reinstating a slew of community custody conditions, including going back to treatment despite his graduation from treatment nearly nine years earlier. CP at 105, 121-36. Petterson declined to sign the new conditions, citing the 2008 order suspending most conditions. CP at 136. The Department then filed an amicus motion to reinstate the department-compliance condition, arguing the court did not have the authority to remove it in 2008. CP at 54-64. The court granted the motion, and the Court of Appeals affirmed. CP at 142-46; *State v. Petterson*, 198 Wn. App. 673, 394 P.3d 385 (2017). The Court of Appeals held that the court did not have authority to modify any community custody conditions in 2008 because the treatment termination hearing occurred in 2005, and that regardless of the timing, the department-compliance condition was mandatory and could never be suspended. *Petterson*, 198 Wn. App. at 682-84. The Court of Appeals went even further and held that after final judgment and sentencing, the court loses jurisdiction to the Department. *Id.* at 681-82.

Petterson petitioned for review, which this court granted. *State v. Petterson*, 189 Wn.2d 1001, 400 P.3d 1257 (2017). We hold that while the department-

4

*State v. Petterson*
No. 94439-3

compliance condition is statutorily mandatory, the court retains jurisdiction during the life of a SSOSA and has authority to modify discretionary conditions.

## ISSUES

1.    Did the court have authority to modify community custody conditions at the 2008 hearing?

2.    Do courts have authority to remove the department-compliance condition?

3.    Do courts lose jurisdiction to the Department after imposing a SSOSA and lack authority to modify conditions after the treatment termination hearing?

## ANALYSIS

We must interpret the SSOSA statute to determine when the superior court has authority to modify community custody conditions and whether the specific department-compliance condition can ever be removed.

"Statutory interpretation is a question of law, subject to de novo review." *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006). In reading the SSOSA statute, this court's duty is to "give effect to the Legislature's intent." *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). The clearest indication of legislative intent is the language enacted by the legislature itself. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). Therefore, "if the meaning of a statute is plain on its face, we 'give effect to that plain meaning.'" *Id.* (internal quotation marks omitted) (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281

5

*State v. Petterson*
No. 94439-3

(2005)). However, we will not read a statute in isolation; we determine its plain meaning by taking into account "the context of the entire act," as well as other related statutes. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014).

### 1. The Superior Court Had the Authority To Modify Community Custody Conditions at the 2008 Hearing

As both parties agree, the statute explicitly grants courts authority to modify conditions of community custody at the treatment termination hearing. The statute provides that "[a]t the treatment termination hearing the court may . . . [m]odify conditions of community custody." RCW 9.94A.670(9)(a). However, the parties disagree about whether the superior court's 2008 order was a part of the treatment termination hearing. While "hearing" indicates a singular proceeding, in this case the treatment termination hearing was comprised of six proceedings occurring between October 2005 and May 2008. Pet. for Review at 15.

The three-year span of the treatment termination hearing was spurred by the scrivener's error in the 2005 order. CP at 15. After the court mistakenly terminated community custody, the order was not corrected and final until the hearing on May 30, 2008, when the court removed the department-compliance condition. CP at 40. The Department argues that the hearings held from 2006 to 2008 were not a part of the treatment termination hearing because treatment was never at issue. State's Answer to Pet. for Review at 8. This is not persuasive. By statute, the treatment termination hearing addresses two components of the SSOSA: treatment and

6

*State v. Petterson*
No. 94439-3

community custody. RCW 9.94A.670(9). When one issue in a case is decided but the court continues to grapple with the other, the case is not yet final. *See State v. Siglea*, 196 Wash. 283, 285-86, 82 P.2d 583 (1938). Similarly, while the court resolved the treatment issue in 2005 by terminating treatment, the community custody issue was not resolved until May 2008. Thus, the course of proceedings from 2005 to 2008 were all a part of the treatment termination hearing.

Because the May 2008 proceeding was a part of the treatment termination hearing, the court had explicit statutory authority to modify conditions of community custody at that time.

### 2. *The Superior Court Did Not Have Authority To Remove the Department-Compliance Condition Because It Is Mandatory*

After finding that the court had authority to modify conditions in the 2008 order, we must then determine if the court could remove the department-compliance condition. The Department argues that the court did not have authority to do so because it is statutorily mandatory. Suppl. Br. of Department at 11-13.

The statutory provision that gives courts the power to modify community custody conditions does not specify which conditions can be removed. However, there are two places in the SSOSA statute indicating that the department-compliance condition must be imposed along with any term of community custody. First, in describing the elements of a SSOSA, it states, "[A]s conditions of the suspended sentence, *the court must impose the following*: . . . [a] term of community

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

custody . . . and *require the offender to comply with any conditions imposed by the department* under RCW 9.94A.703." RCW 9.94A.670(5)(b) (emphasis added). Under the plain meaning of this section, "must," a synonym of "shall," operates to create a duty rather than conferring jurisdiction. *See State v. Bartholomew*, 104 Wn.2d 844, 848, 710 P.2d 196 (1985).

In a neighboring section, the statute lists conditions the court may impose and labels the department-compliance condition as a "[m]andatory" condition. RCW 9.94A.703(1) (boldface omitted). It provides that "[w]hen a court sentences a person to a term of community custody, the court shall impose conditions of community custody as provided in this section." RCW 9.94A.703. It goes on to list conditions that are "[m]andatory," "[w]aivable," "[d]iscretionary," and "[s]pecial." *Id.* (boldface omitted). Under "[m]andatory conditions," it states that "[a]s part of *any term of community custody*, the court *shall* . . . . [r]equire the offender to comply with any conditions imposed by the department under RCW 9.94A.704." RCW 9.94A.703(1)(b) (emphasis added). The directive "shall" is treated as presumptively imperative. *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015).

Though the statute does not provide a timeline for these mandatory conditions, the plain meaning of the statute indicates they must be imposed so long as the offender is under community custody. The introductory language of the subsection,

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"[w]hen a court sentences a person to a term of community custody," indicates that they are mandatory at the outset of a SSOSA. RCW 9.94A.703. Then, the phrase "any term of community custody" denotes that these conditions must accompany community custody. RCW 9.94A.703(1). There is no text that points to a time when these conditions become optional. Thus, under the plain language of the SSOSA statute, the department-compliance condition is mandatory.

Petterson puts forth a policy argument that, while compelling, does not overcome the plain meaning of the SSOSA statute. Petterson argues that the courts, rather than the Department, are best suited to remove or impose conditions in response to life changes. Petterson argues that community custody modification should be made "by judges in an adversarial setting with input from all concerned parties" rather than by a community corrections officer, a "quasi-judicial officer." Suppl. Br. of Appellant at 1. Petterson's argument is particularly persuasive in light of his experience with the Department. After years of complete compliance, successfully completing treatment, and even being taken off the sex offender registry, his new CCO in King County had the authority to impose conditions that essentially take him back to square one. This scenario seems antithetical to the purpose of SSOSA to rehabilitate offenders. However, his new CCO's authority is not unfettered. As we explain below, the statute imbeds court oversight by giving courts authority to modify discretionary conditions.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Petterson*
No. 94439-3

### 3. *The Superior Court Retains Jurisdiction To Modify Community Custody Conditions after Imposing a SSOSA*

The statutory scheme mandates court supervision during the life of a SSOSA. *See State v. Bigsby*, 189 Wn.2d 210, 214, 399 P.3d 540 (2017) ("the court has concurrent supervisory authority with the Department over these offenders"). The SSOSA statute gives courts explicit authority to modify discretionary conditions during annual treatment review hearings and at the treatment termination hearing. RCW 9.94A.670(7)-(9). If the court and the Department disagree on a particular condition, the statute gives greater authority to the court: "[T]he department may not impose conditions that are contrary to those ordered by the court and may not contravene or decrease court-imposed conditions." RCW 9.94A.704(6). The court also has explicit authority to "revoke the suspended sentence at any time during the period of community custody." RCW 9.94A.670(11). These provisions indicate that the statute's intent is for courts to impose and modify conditions and have the power to trump the Department if there is disagreement on a discretionary condition.

The Department argues that beyond those explicit grants of authority, courts do not have jurisdiction to modify community custody conditions. Suppl. Br. of Department at 13-16. The Department argues that the court cannot modify conditions after the treatment termination hearing because the statute does not give explicit authority to modify conditions beyond that event. *Id.* The Court of Appeals agreed with the Department and further held that courts lose jurisdiction to the Department

10

after final judgment and sentencing. *Petterson*, 198 Wn. App. at 681-82. The

Department and the Court of Appeals rely on *Shove* and *Harkness*, which hold that

"SRA sentences may be modified only if they meet the statutory requirements relating

directly to the modification of sentences." *State v. Harkness*, 145 Wn. App. 678, 685,

186 P.3d 1182 (2008) (citing *State v. Shove*, 113 Wn.2d 83, 89, 776 P.2d 132 (1989)).

However, these cases are distinguishable because both decisions deal with the

finality of non-SSOSA sentences. *Id.* at 684-86 (holding that the court lacked

authority to convert a standard 90-month sentence to a drug offender sentencing

alternative); *Shove*, 113 Wn.2d at 85-89 (holding that the court lacked authority to

modify a work release sentence to a suspended sentence with probation). *Shove* and

*Harkness* speak to court authority only over standard final sentences, not the court's

authority to modify community custody conditions under a SSOSA. *Id.* The

authority the SRA gives to courts under the SSOSA scheme is unique. Unlike a

standard final sentence in the SRA, the conditions are designed to change during a

SSOSA as the person rehabilitates. *See* RCW 9.94A.670; .703. Because the

conditions under a SSOSA are intended to be modified by the court, *Shove* and

*Harkness* do not apply here.

Without case law to point to, we look to the SSOSA scheme to interpret the

court's authority. The SSOSA statutory scheme indicates that courts maintain

jurisdiction and have the authority to modify conditions throughout the life of the

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

SSOSA. We hold that unless the SSOSA is revoked, courts have authority to modify discretionary community custody conditions. While the annual review hearings and treatment termination hearing are set out in the statute as times the court may modify conditions, the court also has authority to modify conditions upon a motion by the offender, the State, or the Department.

## CONCLUSION

We affirm the Court of Appeals' ultimate holding that the superior court did not have the authority to remove the department-compliance condition. However, our holding departs from the Court of Appeals' decision in two important ways. First, we find that the hearing in 2008 was an extended part of the treatment termination hearing that began in 2005. Second, we hold that after imposing a SSOSA, courts retain jurisdiction and may modify discretionary community custody conditions even after treatment is terminated.

*State v. Petterson*
No. 94439-3

WE CONCUR: