**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 27, 2023

*Gonzáles C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 27, 2023

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 101004-4 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| JEREMY DUSTIN HUBBARD, | ) | |
| Respondent. | ) | Filed: April 27, 2023 |

YU, J. — This case concerns a trial court's authority to modify court-imposed community custody conditions where the person seeking modification alleges that their factual circumstances have changed since the time of sentencing. Consistent with our precedent, we hold that outside a direct appeal or a timely collateral attack, a trial court cannot modify court-imposed community custody conditions after sentencing without express statutory authority to do so.

In this case, the trial court granted Jeremy Dustin Hubbard's motion to modify a court-imposed community custody condition approximately 15 years

*State v. Hubbard*, No. 101004-4

after sentencing based on a change in Hubbard's factual circumstances. The Court

of Appeals affirmed. However, the current statutory framework does not contain a

provision authorizing Hubbard's requested modification. Therefore, we reverse

the Court of Appeals and remand to the trial court to vacate its order in accordance

with this opinion.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.      Underlying conviction and sentence

In 2005, Hubbard pleaded guilty to rape of a child in the first degree with a

special allegation of domestic violence. The victim was his then stepdaughter,

seven-year-old HRT.

Prior to sentencing, Hubbard was evaluated for a special sexual offender

sentencing alternative (SSOSA) pursuant to RCW 9.94A.670.[1] The evaluator

determined that Hubbard's "risk of sexual offense to the community at large is

relatively low" because "[h]is offenses occurred within the family setting and

environment in which he attained levels of personal control." Clerk's Papers (CP)

at 57. However, Hubbard was at risk to reoffend under "circumstances similar to

the environment of his initial offense." *Id.* Nevertheless, the evaluator believed

---

[1] The sentencing statutes have been amended numerous times since the time of Hubbard's offense. The parties do not suggest that any of the statutory amendments affect our analysis in this case. We therefore cite the current versions of statutes except where expressly indicated otherwise.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that Hubbard's risk could be reduced with treatment and therefore "perceive[d]

him to be an appropriate candidate for a SSOSA-style sentence." *Id.*

Hubbard was initially granted a SSOSA at sentencing. As a result, his

prison sentence was suspended and Hubbard was "placed on community custody

under the charge of DOC [(Department of Corrections)]." *Id.* at 62. Appendix H

to the judgment and sentence sets forth a number of court-imposed community

custody conditions, including a discretionary condition limiting Hubbard's contact

with minors. The condition does not entirely *prohibit* such contact, but it provides

that Hubbard "[s]hall not cause or have contact with minors under 18 years of age

without" approval of his community corrections officer (CCO).[2] J. & Sentence,

App. H (App. H) at 2.

Hubbard's SSOSA was revoked in 2006 due to multiple community custody

violations, including "[h]aving contact with a minor without the permission of [his]

therapist or CCO." CP at 68. As a result of the revocation, the trial court imposed

the previously suspended sentence of 123 months to life in confinement.

Hubbard's sentence expressly included "[a]ll of the other terms and conditions of

---

[2] Hubbard's judgment and sentence also contains a "supervision schedule" with a number of community custody conditions. CP at 63 (capitalization and boldface omitted). However, in the motion presented for our review, Hubbard sought only "to amend paragraph 11 of Appendix H." Verbatim Rep. of Proc. (Jan. 11, 2021) at 2.

*State v. Hubbard*, No. 101004-4

the Judgment and Sentence previously entered," including the community custody "[c]onditions in Appendix 'H.'" *Id.* at 70, 69.

Approximately nine years later, Hubbard was released from prison by the Indeterminate Sentence Review Board (ISRB) on March 26, 2015. *Id.* at 78. The order of release provided that Hubbard would "be on community custody supervision for the length of [his] statutory maximum term," which is life. *Id.*; *see* RCW 9A.44.073(2), 9A.20.021(1)(a). Hubbard's community custody included all the court-imposed conditions listed in his judgment and sentence, and allowed additional conditions to be imposed by his CCO and the ISRB.

B.      Motion and order modifying community custody condition

After his release, Hubbard got married and his wife became pregnant. In December 2020, Hubbard asked the superior court to modify his community custody conditions to allow "unsupervised contact with his daughter."[3] CP at 88. In his motion, Hubbard did not cite any statute, rule, or case indicating that a trial court has authority to modify community custody conditions based on a change in factual circumstances after sentencing.

---

[3] The December 2020 motion is Hubbard's second request to the trial court to modify his court-imposed community custody conditions. In May 2020, Hubbard successfully asked the trial court to modify several of his court-imposed community custody conditions, including the condition limiting his contact with minors. The State did not appeal that order, and we do not address it here.

4

*State v. Hubbard*, No. 101004-4

The State objected, arguing that "[a] sentence can only be modified as provided in the" Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, and that the trial court's authority to modify community custody conditions "ends when the SSOSA sentence is terminated." *Id.* at 91 (citing *State v. Petterson*, 190 Wn.2d 92, 103, 409 P.3d 187 (2018)). In reply, Hubbard argued that CrR 7.8(b)(5) grants trial courts the authority to modify discretionary, court-imposed community custody conditions whenever "[u]nforeseen circumstances" arise. *Id.* at 96.

In January 2021, the trial court ruled that it had "authority under CrR 7.8" to modify the court-imposed community custody conditions because "the courts are supposed to have some discretion." Verbatim Rep. of Proc. (Jan. 11, 2021) at 25. The trial court issued an order allowing Hubbard "to have unsupervised contact with his children and [future] grandchildren," but it specified that the DOC "has the authority to reinstate the no contact provisions and/or require that contact be supervised" based on "reasonable suspicion." CP at 106.

C.     State's appeal

The State appealed, arguing that the trial court lacked authority to change the conditions of a sentence, that the trial court abused its discretion on the merits, and that Hubbard's motion was time barred. Initially, the Court of Appeals affirmed the trial court in an unpublished opinion, relying solely on the language of CrR

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

7.8(b)(5). *State v. Hubbard*, noted at 21 Wn. App. 2d 1008, 2022 WL 291034, at *2-3.

The State moved for reconsideration. The Court of Appeals withdrew its unpublished opinion and filed a substitute, published opinion, which again affirmed the trial court. *State v. Hubbard*, 21 Wn. App. 2d 834, 508 P.3d 691 (2022). However, in its analysis, the Court of Appeals relied on the "newly discovered evidence" exception to the one-year time limit for collateral attacks as the basis for permitting modification based on Hubbard's changed factual circumstances. *Id.* at 839-40 (citing RCW 10.73.100(1)). Hubbard never argued this time bar exception at the trial court or in his Court of Appeals briefing.

We granted the State's petition for review and also granted review of Hubbard's contingent issue relating to the timeliness of collateral attacks. We now reverse the Court of Appeals and remand to the trial court with directions to vacate the order entered in accordance with this opinion.

## ISSUE

Did the trial court have authority to modify Hubbard's court-imposed community custody condition after his SSOSA was revoked?

## ANALYSIS

Although Hubbard's motion to modify his community custody condition did not initially cite any supporting authority, the trial court ultimately relied on CrR

6

*State v. Hubbard*, No. 101004-4

7.8(b)(5). "Generally, we review trial court decisions on CrR 7.8 motions for abuse of discretion." *State v. Enriquez-Martinez*, 198 Wn.2d 98, 101, 492 P.3d 162 (2021). "Discretion may be abused if it is exercised on untenable grounds or for untenable reasons, such as a misunderstanding of the law." *Id.* As discussed below, the trial court did not have authority to modify Hubbard's court-imposed community custody condition and thus abused its discretion.

A.    Absent an express statutory provision, a trial court does not retain authority to modify community custody conditions after sentencing

The SRA "imposes a regime of structured discretion" for the courts. *State v. Parker*, 132 Wn.2d 182, 186, 937 P.2d 575 (1997). We have long held that outside of a direct appeal or timely collateral attack, "SRA sentences may be modified only if they meet the requirements of the SRA provisions relating directly to the modification of sentences." *State v. Shove*, 113 Wn.2d 83, 89, 776 P.2d 132 (1989). Without express statutory authority, "[a]fter final judgment and sentencing, the court loses jurisdiction to the DOC." *State v. Harkness*, 145 Wn. App. 678, 685, 186 P.3d 1182 (2008).

Nevertheless, Hubbard argues that the "trial court was well within its discretion to grant" his motion pursuant to CrR 7.8(b)(5). Resp. to Pet. for Rev. at 10. Additionally, Hubbard suggests that a trial court has inherent authority to "exercise[ ] its discretion" to modify discretionary conditions "to account for circumstances that did not exist at the time of the original judgment," and he

7

claims that such modifications "are routine around the State." *Id.* at 6, 9; Suppl.

Br. of Resp't at 13. We reject these arguments and hold that a trial court does not

have inherent or statutory authority to modify court-imposed community custody

conditions in a non-SSOSA sentence based on a change in factual circumstances

after sentencing.

1.      Statutory framework governing terms of community custody and
        conditions imposed

To provide context for our analysis, it is necessary to briefly review the

statutory framework. Broadly speaking, community custody terms and conditions,

like most sentencing provisions, are governed by the SRA. The provisions most

relevant to this case are RCW 9.94A.507, .703, .704, and .709.

RCW 9.94A.507 (formerly RCW 9.94A.712) governs the community

custody portion of Hubbard's sentence. *See* RCW 9.94A.507(1)(a)(i). Where

applicable, RCW 9.94A.507(5) requires that the sentencing court impose a term of

community custody "for any period of time the person is released from total

confinement before the expiration of the maximum sentence." Thus, the

sentencing court in this case was required to sentence Hubbard to community

custody for the statutory maximum term applicable, which is life.

RCW 9.94A.703 provides a list of conditions that may be imposed on

community custody, which are grouped into four categories: "[m]andatory,"

"[w]aivable," "[d]iscretionary," and "[s]pecial" conditions. (Boldface omitted.)

The community custody condition limiting Hubbard's contact with minors falls

within the discretionary category of conditions. *See* RCW 9.94A.703(3)(b).

RCW 9.94A.704(1) provides that "[e]very person who is sentenced to a

period of community custody shall report to and be placed under the supervision

of" the DOC.[4] The statute permits the DOC to "establish and modify additional

conditions of custody based upon the risk to community safety." RCW

9.94A.704(2)(a). However, the DOC "may not impose conditions that are contrary

to those ordered by the court and may not contravene or decrease court-imposed

conditions." RCW 9.94A.704(6). If the offender is subject to the ISRB's

authority, the ISRB has similar authority to "impose conditions in addition to

court-ordered conditions." RCW 9.94A.704(10)(b). There are no DOC or ISRB

imposed conditions at issue in this case.

RCW 9.94.704 also sets forth the administrative processes by which a

person on community custody may challenge conditions imposed by the DOC or

the ISRB. RCW 9.94.704(7)(b), (10)(c). However, the statute is silent as to the

sentencing court's authority to modify court-imposed community custody

conditions due a change in factual circumstances after the judgment and sentence

is final. Indeed, the only express authority courts have to alter community custody

---

[4] This provision is "subject to RCW 9.94A.501." RCW 9.94A.704(1). It applies to Hubbard in accordance with RCW 9.94A.501(4)(a) and .507(5).

9

*State v. Hubbard*, No. 101004-4

conditions in non-SSOSA sentences is the authority to "impose and enforce an order *extending* any or all of the conditions of community custody." RCW 9.94A.709(1) (emphasis added).

Consequently, there is no express statutory language supporting the trial court's authority to modify Hubbard's community custody condition in this case. In this area of law, that highly regulates a trial court's discretion, we have interpreted the statutory silence to mean a lack of authority, and Hubbard has offered no case law that holds otherwise.

   2.   Trial courts lack the authority to modify community custody
        conditions except in narrow circumstances not presented here

Our precedent in *Shove*, 113 Wn.2d 83, and *Petterson*, 190 Wn.2d 92, controls our interpretation of the statutory framework governing modification of court-imposed community custody conditions. Consistent with this precedent, we hold that a trial court does not have authority to modify court-imposed community custody conditions outside of the limited statutory authority provided in the SRA, even if the conditions were discretionary when they were imposed.

*Shove* is our leading case governing modifications of SRA sentences. In *Shove*, the defendant was sentenced to one year of "partial confinement at a work release center." 113 Wn.2d at 85. After five months, the defendant successfully petitioned the court to modify her sentence because she would be unable to pay fees and restitution if she was not "immediately released." *Id.* The trial court

10

*State v. Hubbard*, No. 101004-4

amended the original judgment and sentence to impose an "exceptional" suspended sentence of 10 years, plus 10 years of probation. *Id.* The Court of Appeals affirmed, but this court reversed.

We explained that because "Washington sentencing laws are structured as a system of determinate sentencing," the sentence "is ascertained at the time of sentencing, and is generally not subject to later change." *Id.* at 86. Accordingly, we held that the "SRA permits modifications of sentences only in specific, carefully delineated circumstances," which were not present in *Shove*. *Id.* We also explicitly rejected "[t]he claim that the power to set a sentence carries with it the power later to modify that sentence" because such a claim "ignores the importance of finality in rendered judgments." *Id.* at 88. Therefore, we held that "SRA sentences may be modified only if they meet the requirements of the SRA provisions relating directly to the modification of sentences." *Id.* at 89.

More recently, in *Petterson*, we emphasized this point of law when we considered a trial court's "authority to modify conditions of community custody at the treatment termination hearing" in the narrow context of a SSOSA sentence. 190 Wn.2d at 98. SSOSA sentences are governed by RCW 9.94A.670, and "[t]he authority the SRA gives to courts under the SSOSA scheme is unique." *Id.* at 102. Specifically, "[t]he SSOSA statute gives courts explicit authority to modify discretionary conditions during annual treatment review hearings and at the

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

treatment termination hearing." *Id.* at 101 (citing RCW 9.94A.670(7)-(9)). We therefore held that "*unless the SSOSA is revoked*, courts have authority to modify discretionary community custody conditions." *Id.* at 103 (emphasis added). The authority to modify is only for active SSOSA sentences still under annual reviews.

Here, Hubbard's SSOSA was revoked long before he sought to modify his community custody condition, so the "unique" authority provided by the SSOSA statute does not apply in this case. Moreover, *Petterson* explicitly distinguished a SSOSA sentence from "a standard final sentence in the SRA" because "conditions are designed to change during a SSOSA as the person rehabilitates." *Id.* at 102. Thus, *Petterson* recognized a trial court's limited authority to modify SSOSA conditions, while also reaffirming "the finality of non-SSOSA sentences," which are subject to *Shove*. *Id.*

Nevertheless, Hubbard contends that "[s]ubsequent courts" have limited *Shove* to modifications of "the term of incarceration after sentencing" and that *Shove* does not apply to community custody conditions. Resp. to Pet. for Rev. at 9-10 (citing *State v. Hayden*, 72 Wn. App. 27, 30, 863 P.2d 129 (1993); *State v. Dana*, 59 Wn. App. 667, 800 P.2d 836 (1990); *State v. Richard*, 58 Wn. App. 357, 792 P.2d 1279 (1990)). We disagree. None of the precedent Hubbard cites supports his argument.

*State v. Hubbard*, No. 101004-4

In both *Hayden* and *Richard*, the Court of Appeals affirmed modifications of conditions in dispositions imposed pursuant to the Juvenile Justice Act of 1977 (JJA), ch. 13.40 RCW. *Hayden* explicitly distinguished a JJA disposition from "a determinate sentence under the [SRA]." 72 Wn. App. at 31. Moreover, in both cases, the Court of Appeals relied on the unique statutory provisions of the JJA, not the SRA. *Id.*; *Richard*, 58 Wn. App. at 360. Thus, neither *Hayden* nor *Richard* purports to limit *Shove* to modifications of terms of confinement, as Hubbard argues in this case.

Hubbard further relies on *Dana*, where the trial court amended the defendant's sentence to allow "a furlough or partial confinement." 59 Wn. App. at 669. The Court of Appeals affirmed because former RCW 9.94A.150 (1984) (*now codified as* RCW 9.94A.728) set forth precisely the type of "specific, carefully delineated circumstances" in which an SRA sentence may be modified in accordance with *Shove*. *Id.* Thus, *Dana* does not purport to limit *Shove*; it merely applies *Shove*'s reasoning in a case where there was express statutory authority to modify the defendant's sentence. Hubbard, by contrast, does not point to any statute expressly authorizing the trial court's modification in this case. Thus, his reliance on *Dana* is misplaced.

Consequently, all the cases Hubbard cites are factually and legally distinguishable. In accordance with *Petterson*, we hold that once Hubbard's

13

SSOSA was revoked, the trial court no longer had authority to modify his court-imposed community custody conditions. 190 Wn.2d at 103. Instead, following the SSOSA revocation, Hubbard's sentence became a "standard final sentence[ ]" governed by *Shove. Id.* at 102. Pursuant to *Shove*, Hubbard's court-imposed community custody conditions cannot be modified unless there is an SRA provision that allows modification. There is none. Accordingly, we hold that the trial court did not have inherent or statutory authority to modify Hubbard's community custody condition, and that it abused its discretion in doing so.

B.      We decline to treat Hubbard's motion to modify his court-imposed community custody condition as a timely collateral attack

As a final matter, we briefly address the arguments presented on appeal concerning collateral attacks. As noted above, Hubbard argued at the trial court that his motion to modify his court-imposed community custody condition was authorized by CrR 7.8(b)(5). Although Hubbard's motion was brought well outside RCW 10.73.090's one-year time bar for collateral attacks, Hubbard argues on appeal that "RCW 10.73.090 does not apply to CrR 7.8(b)(5) motions." Resp. to Pet. for Rev. at 11; *see* Suppl. Br. of Resp't at 2. We disagree.

We have recently taken the opportunity to explain that "[c]ollateral attacks filed in superior court are governed by CrR 7.8" and that "[t]he same time constraints apply whether the collateral attack is filed in superior court, the Court of Appeals, or this court." *State v. Molnar*, 198 Wn.2d 500, 508, 497 P.3d 858

14

(2021). We now clarify that this reasoning is applicable to all motions brought pursuant to CrR 7.8(b), regardless of the subsection relied on by the petitioner. *See id.* (citing CrR 7.8(b); RAP 16.4(d)). Hubbard does not point to any authority recognizing an exception to the one-year time limit for CrR 7.8(b)(5) motions, and we decline to create such an exception in this case.

We further decline to hold that Hubbard's motion to modify his community custody condition is exempt from the time bar pursuant to RCW 10.73.100(1) or (2). Hubbard did not cite to any of the RCW 10.73.100 exceptions at the trial court level and, on appeal, he cited only RCW 10.73.100(2) to argue that the community custody condition limiting his contact with minors is unconstitutional as applied to him. *See* Br. of Resp't at 21 (Wash. Ct. App. No. 55584-1-II (2021)); Resp. to Pet. for Rev. at 18. However, the Court of Appeals did not rely on RCW 10.73.100(2), and we decline to adopt the Court of Appeals' analysis applying the newly discovered evidence rule to this case pursuant to RCW 10.73.100(1). As discussed above, the trial court did not have the authority to modify the community custody condition in the first instance.

## CONCLUSION

Absent a statutory provision that allows for a modification, trial courts do not have the authority to modify a court-imposed discretionary community custody condition in a non-SSOSA sentence. We reverse the Court of Appeals and remand

*State v. Hubbard*, No. 101004-4

to the trial court with directions to vacate its order granting such modification. In doing so, we note that the plain language of the community custody condition in Appendix H to Hubbard's judgment and sentence does not actually prohibit unsupervised contact with minors. Instead, it prohibits "contact with minors under 18 years of age *without CCO's approval*." App. H at 2 (emphasis added).

We recognize that factual circumstances may change after a person is sentenced to a lifelong term of community custody and that such changes may merit a modification of those conditions. But those concerns, with some foresight, can be addressed by the sentencing judge at the time the terms of the condition are drafted. Nothing prohibits a trial court from drafting its court-imposed community custody conditions in a manner that explicitly allows for future modifications by the DOC or ISRB based on changed factual circumstances. As this case shows, absent a carefully written condition or a grant of express statutory authority by the legislature, there is no avenue for relief once a sentence becomes final.

*State v. Hubbard*, No. 101004-4

_____
Yu, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Whitener, J.

17